NOT FOR PUBLICATION [Dkt. Ent. 13]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

TIJUANA JOHNSON,

   Plaintiff,

  v.

WYNN'S EXTENDED CARE, INC., and
NATIONAL CASUALTY COMPANY,

   Defendants.

Civil No. 12-0079 (RMB/KMW)

**OPINION**

APPEARANCES:

Andrew P. Bell, Esq.
Michael A. Galpern, Esq.
Locks Law Firm LLC
457 Haddonfield Road, Suite 500
Cherry Hill, NJ 08002

 Attorneys for Plaintiff

Kevin M. McKeon, Esq.
Marshall, Dennehey, Warner, Coleman & Goggin, PC
Woodland Falls Corporate Park
200 Lake Drive East, Suite 300
Cherry Hill, NJ 08002

 Attorney for Defendants

**BUMB**, UNITED STATES DISTRICT JUDGE:

 The defendants, Wynn's Extended Care, Inc. ("Wynn") and National Casualty Company (collectively, the "Defendants"), have moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). [Dkt. Ent. 13.] For the reasons that follow,

this motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

This is a putative class action brought by plaintiff Tijuana Johnson (the "Plaintiff") on behalf of herself and all others similarly situated.  The Amended Complaint alleges the following facts.  On February 12, 2011, Plaintiff purchased a used car from Smitty's Auto.  She also purchased, via Smitty's Auto, a "Used Vehicle Service Contract" ("UVSC" or "Contract") from Defendants.  In May 2011, Plaintiff's car stopped operating.  At the direction of Defendant Wynn's agent, Smitty's Auto, Plaintiff had her vehicle taken to Exclusive Auto in Burlington, New Jersey, to determine what repairs were needed.  Wynn authorized Exclusive Auto to inspect the vehicle.  Excusive Auto determined that the vehicle needed a new engine.  Plaintiff asked Wynn to repair the vehicle.  Wynn initially denied this request on the grounds that the UVSC did not provide coverage for the engine, because it was covered under the manufacturer's warranty.  Plaintiff then contacted the car manufacturer, General Motors, and requested a repair under the warranty.  General Motors denied coverage because Exclusive Auto had taken apart the engine.  Plaintiff again contacted Wynn and demanded that it cover the cost of the engine repair under the UVSC.  Wynn again denied coverage.  After Plaintiff commenced this action in state court, however, Wynn agreed to pay for the repair, which was completed in December 2011.  Plaintiff claims she lost the use of her car for

2

at least six months and paid approximately $2,160 to the finance company during this time in addition to the costs of automobile insurance and towing. On January 5, 2012, Defendants removed the case to this Court alleging federal jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d).

**LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Sheridan v. NGK Metals Corp., 609 F.3d 239, 263 n. 27 (3d Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678).

> The Court conducts a three-part analysis when reviewing a claim:
>
> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions are not entitled to the assumption of truth." Id. at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id.

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010); see also Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) ("[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.").

3

**ANALYSIS**

The Amended Complaint alleges violations of the New Jersey Consumer Fraud Act ("CFA"), N.J. Stat. Ann. § 56:8-1, et seq. (Count One); the Truth in Consumer Contract, Warranty, and Notice Act ("TCCWNA"), N.J. Stat. Ann. § 56:12-14, et seq. (Count Two); and the Plain Language Act ("PLA"), N.J. Stat. Ann. § 56:12-1, et seq. (Count Three). Plaintiff also seeks declaratory and injunctive relief (Count Four). The crux of these claims is that the arbitration provision in the UVSC violates Plaintiff's rights under the above-listed consumer protection statutes. Am. Compl. ¶ 35(a-f). Defendants moved to dismiss the Amended Complaint, arguing the validity of the arbitration provision, but also waiving their right to compel arbitration. [Dkt. Ents. 13, 17.]

Since the putative class has not been certified, the Court evaluates the Amended Complaint as to the particular plaintiff. Green v. Green Mountain Coffee Roasters, 279 F.R.D. 275, 281 (D.N.J. 2011) (citing Rolo v. City of Investing Co. Liquidating Trust, 155 F.3d 644, 659 (3d Cir. 1998), abrogation on other grounds recognized, Forbes v. Eagleson, 228 F.3d 471 (3d Cir. 2000); Luppino v. Mercedes-Benz USA, LLC, Civ. No. 09-5582, 2010 WL 3258259, *4 (D.N.J. Aug. 13, 2010)). The Court addresses Plaintiff's individual claims in turn.

    **1.  CFA Claim (Count One)**

To state a cause of action under the CFA, a plaintiff must allege:

(1) an unlawful practice by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal nexus between the defendant's unlawful practice and the plaintiff's ascertainable loss. Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund, 929 A.2d 1076, 1086 (N.J. 2007)(citation omitted); Arcand v. Brother Intern. Corp., 673 F. Supp. 2d 282, 296 (D.N.J. Nov. 30, 2009)(citations omitted).[1] New Jersey courts have recognized that the CFA is remedial legislation and should be liberally construed in favor of consumers. Cox v. Sears Roebuck & Co., 647 A.2d 454, 461 (N.J. 1994).

While not a model of clarity, it appears Plaintiff attempts to assert two "unlawful practices" to support her CFA claim.[2]

First, she points to Defendants' affirmative act in denying coverage:

> The aforesaid misrepresentations, deceptive and unconscionable practices of Defendants in denying warranty coverage and/or payments to Plaintiff and members of the Damage Subclass constitute violations of the New Jersey Consumer Fraud Act.

---

[1] The CFA provides in relevant part:
  Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act or the act hereby amended and supplemented may bring an action or assert a counterclaim therefor in any court of competent jurisdiction.
N.J. Stat. Ann. § 56:8-19.

[2] The CFA defines an "unlawful practice" as "any unconscionable commercial practice, deception, fraud, false pretense, false promise, or misrepresentation, or the knowing, concealment, suppression, or omission of any material fact . . . .". N.J. Stat. Ann. § 56:8-2. "Unlawful practices" fall into three general categories: affirmative acts, knowing omissions, and regulatory violations. Cox, 647 A.2d at 462.

. . .

> The conduct and actions of Defendants, as set forth above, have directly, foreseeably, and proximately caused ascertainable damages in amounts Plaintiff and each member of the Damage Subclass paid for the costs incurred, due and/or otherwise suffered because to [sic] Defendants' conduct in denying coverage and not paying for "Covered Breakdowns", either in whole or in part, as defined in the UVSCs.

Am. Compl. ¶¶ 59, 62. Notably, Plaintiff has not adduced any facts to permit the inference that Defendants' denial of coverage was unconscionable, deceptive, or fraudulent in violation of the CFA. In fact, Plaintiff has not even alleged entitlement to repairs under the Contract.[3] Nor has she alleged that Defendant's conduct in denying coverage after the manufacturer refused to cover the repairs somehow violated the CFA. Since Plaintiff's allegations amount to mere conclusions, they fall short of federal pleading standards. Santiago, 629 F.3d at 130 (quoting Iqbal, 556 U.S. at 678); Fowler, 578 F.3d at 211 (". . . [A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts."). The CFA claim is therefore DISMISSED WITHOUT PREJUDICE to the extent that it relies on Defendants' denial of coverage as an "unlawful practice".

Second, Plaintiff claims that the arbitration provision itself amounts to an "unlawful practice" because it precludes the type

---

[3] Indeed, based on the Court's own review of the contract, it appears Defendants were not liable for repairs that "would normally be covered by . . . a dealer warranty required under state law." UVSC Part A, ¶ 8.

6

of statutory relief guaranteed by the CFA, TCCWNA, and PLA. Am. Compl. ¶¶ 2, 35(a-d). In other words, Plaintiff contends that if she were to bring such a consumer protection claim under the Contract, the arbitration provision would bar her recovery of certain statutory remedies to which she might be entitled, such as attorney's fees and treble damages, thereby violating the CFA. Defendants argue that this claim fails because the harm alleged is purely theoretical; Plaintiff has not suffered any ascertainable losses stemming from the arbitration provision, and she therefore has not established the second and third elements of a CFA claim.[4]

An "ascertainable loss" for purposes of the CFA refers to an actual loss, one that is definite, certain, and measurable. Bosland v. Warnock Dodge, Inc., 964 A.2d 741, 749 (N.J. 2009); Thiedemann v. Mercedes-Benz USA, LLC, 872 A.2d 783, 792-93 (N.J. 2005)). It is "equivalent to any lost benefit of the bargain"; for example, any out-of-pocket loss or loss in value. Bosland, 964 A.2d at 750; Thiedemann, 872 A.2d at 792-93. While a plaintiff who has suffered a loss in value need not incur an actual financial loss prior to filing suit, her loss may not be theoretical or illusory. Bosland, 964 A.2d at 750; Thiedemann, 872 A.2d at 792-93; Cox v. Sears Roebuck & Co., 647 A.2d 454 (N.J. 1994)(plaintiff whose contractor failed to comply with applicable regulations, thus necessitating further repairs,

---

[4] Defendants also dispute that the arbitration provision violates the CFA. Since the Court dismisses this claim on other grounds, it need not reach this issue.

suffered "ascertainable loss" even though he had not yet paid for repairs, where he submitted proofs as to reasonable cost of repair). To satisfy the third element – causation – a consumer must "demonstrate that he or she suffered an ascertainable loss 'as a result of' the unlawful practice." Lee v. Carter-Reed Co., LLC, 4 A.3d 561, 576 (N.J. 2010)(quoting N.J. Stat. Ann. § 56:8-19 and citing Meshinsky v. Nichols Yacht Sales, Inc., 541 A.2d 1063 (N.J. 1988)).

Here, Plaintiff has not alleged facts showing that she has a claim, which must be arbitrated pursuant to the UVSC. Absent a showing that an underlying dispute exists to trigger the allegedly unlawful arbitration provision, the harm Plaintiff complains of is theoretical at best. It certainly is not definite, certain, or measurable, as required by the CFA. See, e.g., Bosland, 964 A.2d at 749 (noting that a CFA plaintiff must have suffered "a definite, certain and measurable loss, rather than one that is merely theoretical").[5] Since the parties have agreed to waive the

---

[5] Plaintiff cites to numerous cases to support her position, none of which are analogous. For example, her reliance on Bosland is misplaced. There, the plaintiff was "the victim of an overcharge"; the defendant car dealer charged her a registration fee, which was at least $20 greater than the maximum cost of registering her car. 964 A.2d at 744, 750. The New Jersey Supreme Court stressed that this overcharge could be "readily quantified" and was thus ascertainable within the meaning of the CFA. Id. at 750. Similarly, the Appellate Division's decision in Cowger v. Cherry Hill Mitsubishi, Inc., 2011 WL 848133, *1 (N.J. Super. Ct. App. Div. Mar. 14, 2011), is inapposite. There, the plaintiff paid a $500 deposit for the privilege of driving a vehicle for a few days. Id. at *1. After the plaintiff returned the car, the defendant used car dealer failed to return the $500. The plaintiff commenced suit under the CFA, and the defendant then returned the money. The New Jersey Superior Court Appellate Division

8

arbitration provision going forward, it appears that Plaintiff will not suffer such harm in the future.  Accordingly, Defendants' motion to dismiss is granted, and this claim is DISMISSED WITHOUT PREJUDICE.

### 2. TCCWNA Claim (Count Two)

Defendants also move to dismiss Plaintiff's claim under the TCCWNA, which prohibits contract provisions that violate clearly established rights under federal or state law.[6]  Bosland v. Warnock Dodge, Inc., 933 A.2d 942, 949 (N.J. App. Div. 2007), aff'd, 964 A.2d 741 (2009).  In passing this statute, the New Jersey Legislature sought to prevent contracts from including "illegal provisions intended to deceive a consumer into thinking that [such provisions] are enforceable and to result in the consumer failing to enforce his

---

found that Plaintiff had suffered an "ascertainable loss" because the CFA merely requires a loss at the time suit was filed.  Id. at *5.  Here, it is immaterial that Defendants provided the requested repairs after Plaintiff filed suit, because the denial of coverage did not result from the arbitration provision, which is the allegedly unlawful practice.  Similarly, Plaintiff's comparison to the New Jersey Supreme Court's decision in Lee v. Carter-Reed Co., 203 N.J. 496 (2010), is inapt.  There, the court considered claims of false advertising against a weight loss drug.  The court concluded that it could reasonably infer a causal relationship between the deceptive marketing scheme and the purchase of the product, which constituted an "out-of-pocket loss" and therefore an "ascertainable loss" under the CFA.  Id. at 580.  Here, Plaintiff has not alleged a deceptive marketing claim, so the analysis in Lee does not apply.

[6] The TCCWNA provides in relevant part:

> No seller . . . shall . . . enter into any written consumer contract . . . which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, . . . established by State or Federal law at the time the offer is made or the consumer contract is signed . . . .

9

rights." Watkins v. DineEquity, Inc., Civ. No. 11-7182, 2012 WL 3776350, *6 (D.N.J. Aug. 29, 2012) (quoting L.1981, c. 454, Sponsor's Statement to Assembly Bill No. 1660 (N.J. 1981)) (internal quotations omitted). Unlike the CFA, a plaintiff asserting a claim under the TCCWNA need not have suffered any actual damages. Id. at *6.

The parties here dispute whether the arbitration provision violates any clearly established legal right. According to Plaintiff, the arbitration provision's bar on recovery of attorney's fees and costs violates the CFA and therefore violates the TCCWNA.[7] Pl.'s Opp. Br. 29. Defendants argue that the arbitration provision constitutes a valid waiver of Plaintiff's rights. The Court agrees with Plaintiff.

A successful CFA claimant is entitled to recover "reasonable attorneys' fees, filing fees and reasonable costs of suit." N.J. Stat. Ann. § 56:8-19; Delta Funding Corp. v. Harris, 912 A.2d 104, 114 (N.J. 2006) (noting that the CFA provides "mandatory attorney's fees and costs to prevailing parties"). When such statutory remedies

---

N.J. Stat. Ann. § 56:12-15.
[7] The arbitration provision provides in relevant part:

> Any dispute arising out of or relating to this **Contract** shall be settled by final and binding arbitration. . . .
>
> Costs. Each party shall pay the fees of its own attorneys, the expenses of its witnesses, and all other expenses connected with the presentation of its case. The parties shall share equally the cost of arbitration and the fees charged by the arbitrators.

(UVSC, Dkt. Ent. 9-1 (emphasis in original).)

are available to prevailing parties, a defendant "may not limit a consumer's ability to pursue [them]." Delta, 912 A.2d at 113-114 (citing Muhammad v. Cnty. Bank of Rehoboth Beach, 912 A.2d 88, 99 (N.J. 2006)); Mullin v. Automobile Protection Corp., Civ. No. 07-3327, 2008 WL 4509612, *4 (D.N.J. Sept. 29, 2008).

At this stage of the proceedings, the Court must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to Plaintiff. Sheridan, 609 F.3d at 260 n.25 (citation omitted). Given the strict language of the arbitration clause - which mandates that each party "shall" pay its own attorneys' fees and share the costs of arbitration, see supra n.8 - an arbitrator might interpret this to bar a successful CFA claimant from recovering attorney's fees and costs. This result would violate Plaintiff's clearly established rights under the CFA and therefore violate the TCCWNA. Mullin, 2008 WL 4509612, *4 (contract provision requiring each party to bear its own attorney's fees and costs violated CFA and therefore violated TCCWNA).

Defendants' argument that Plaintiff waived her rights by signing the UVSC is unpersuasive. This argument was considered and rejected in Mullin, 2008 WL 4509612, *5, where, like here, the arbitration provision provided that each party must bear its own attorneys' fees and costs but did not disclose that the consumer was waiving her statutory right to such remedies. Id. at *1. In New Jersey, the

"waiver of statutory rights provisions in arbitration agreements must be clear and explicit."  Mullin, 2008 WL 4509612, *5 (quoting Gras v. Associates First Capital Corp., 786 A.2d 886, 893 (N.J. Super. Ct. App. Div. 2001)) (internal quotations omitted); see also Garfinkel v. Morristown Obstetrics & Gynecology Assocs., 773 A.2d 665, 670 (N.J. 2001) ("As we have stressed in other contexts, a party's waiver of statutory rights 'must be clearly and unmistakably established, and contractual language alleged to constitute a waiver will not be read expansively.'") (quoting Red Bank Reg'l Educ. Ass'n, 393 A.2d 267 (N.J. 1978)).  Thus, because the arbitration clause here failed to inform Plaintiff that she was waiving her rights under the CFA, such a waiver did not occur.  Mullin, 2008 WL 4509612, *5; cf. Kuhn v. Terminix, Civ. No. L-2834-07, 2008 WL 1987432, *2 (N.J. Super. Ct. App. Div. May 9, 2008) (arbitration provision, which provided that "any controversy or claim between the [parties] arising out of . . . this agreement shall be settled exclusively by arbitration" did not clearly state that consumers were waiving their rights to pursue statutory claims in court).

　　　Defendants' reliance on Salvadori v. Option One Mortg. Corp., 420 F. Supp. 2d 349 (D.N.J. 2006), is misplaced.  There, the court enforced an arbitration provision, finding that the consumer had waived his right to a jury trial, where the contract explicitly provided:  "both of us are waiving our rights to have disputes resolved in court by a judge or jury".  Id. at 352 (emphasis added).

The contract also stated that the arbitration provision applied to statutory claims. Id. Here, as discussed above, the Contract did not inform Plaintiff that she was waiving her statutory right to attorney's fees and costs. See supra n.8; Mullin, 2008 WL 4509612 *5 (distinguishing Salvadori where the arbitration provision at issue did not explicitly waive statutory rights).

Defendants also argue that the arbitration provision constitutes a valid waiver of Plaintiff's rights under the TCCWNA. The Court rejects this argument, because a consumer's rights under the TCCWNA may not be waived. N.J. Stat. Ann. § 56:12-16 ("No consumer contract, warranty, notice or sign, as provided for in this act, shall contain any provision by which the consumer waives his rights under this act.").

Accordingly, Defendants' motion to dismiss is DENIED as to this claim.

### 3. PLA Claim (Count Three)

Defendants move to dismiss Plaintiff's PLA claim on the grounds that they performed their obligations under the Contract. The PLA requires consumer contracts to be written in a "simple, clear, understandable and easily readable way." N.J. Stat. Ann. § 56:12-2. A defendant may not be liable under the PLA, however, where "both parties to the contract . . . have performed their obligations under the contract." N.J. Stat. Ann. § 56:12-5. Here, Plaintiff argues that Defendants gave her the "run around" by initially refusing to

13

pay for the repair. Pl.'s Br. 30. She does not, however, allege facts showing that the Defendants breached the Contract. See supra. Moreover, Plaintiff has not persuaded the Court that the language here is in fact confusing. Accordingly, Defendants' motion is GRANTED, and this claim is DISMISSED WITHOUT PREJUDICE.

**4. Declaratory and Injunctive Relief (Count Four)**

Defendants also move for dismissal of Plaintiff's individual claim for declaratory and injunctive relief. Since the parties have waived enforcement of the arbitration provision, Plaintiff's claims to preclude Defendants from requiring compliance with the arbitration provision are rendered moot. Accordingly, Defendants' motion is GRANTED.

<strong>CONCLUSION</strong>

For the foregoing reasons, Defendants' motion is GRANTED with respect to Counts 1, 3, and 4, and DENIED with respect to Count 2. The Court will permit Plaintiff to file a second amended complaint, consistent with this Opinion, on or before **December 19, 2012**. Defendants may file a responsive pleading on or before **January 18, 2013**. An appropriate Order will issue herewith.

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE

Date: November 20, 2012