<u>NOT FOR PUBLICATION</u>                    [Docket No. 29]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| TIJUANA JOHNSON, on behalf of herself and other persons similarly situated, | Civil No. 12-cv-00079 (RMB/KMW) |
| Plaintiff, | **OPINION** |
| v. | |
| WYNN'S EXTENDED CARE, INC. and NATIONAL CASUALTY COMPANY, | |
| Defendants. | |

<u>Appearances</u>

Andrew P. Bell
Michael A. Galpern
Locks Law Firm LLC
457 Haddonfield Road
Suite 500
Cherry Hill, New Jersey 08002

Charles N. Riley
Riley & Shaine
900 N. Kings Highway
Cherry Hill, New Jersey 08034
     Attorneys for Plaintiff

Kevin M. McKeon
Marshall, Dennehey, Warner, Coleman & Goggin, PC
Woodland Falls Corporate Park
200 Lake Drive East
Suite 300
Cherry Hill, New Jersey 08002
     Attorney for Defendants

**BUMB**, United States District Judge:

Before the Court is a motion to dismiss the Second Amended Complaint filed by Defendants Wynn's Extended Care, Inc. ("Wynn") and National Casualty Company ("National") (collectively, the "Defendants"). (Docket No. 29.) For the reasons set forth below, Defendants' motion is GRANTED in part, and DENIED in part.

**BACKGROUND**

Plaintiff Tijuana Johnson (the "Plaintiff") brings this putative class action on behalf of herself and other similarly-situated individuals. The case was commenced in state court and removed to this Court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Plaintiff's First Amended Complaint asserted violations of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, et seq. ("CFA"), the New Jersey Truth in Consumer Contract, Warranty and Notice Act, N.J. Stat. Ann. §§ 56:12-14, et seq. ("TCCWNA"), and the New Jersey Plain Language Act (the "PLA"), N.J. Stat. Ann. §§ 56:12-1, et seq. It also sought declaratory and injunctive relief.

Initially, Defendants filed a motion to dismiss the First Amended Complaint, which the Court granted in part, dismissing the CFA and PLA claims as well as the request for declaratory and injunctive relief. Plaintiff thereafter filed a Second Amended Complaint that asserts violations of the CFA (Count I)

and the TCCWNA (Count II).[1] The Court heard oral argument and the parties submitted supplemental briefs. The matter is ripe for this Court's decision.

## A. The Second Amended Complaint

On February 12, 2011, Plaintiff purchased a used 2007 Saturn from Smitty's Auto, a car dealership. At the same time, she purchased a "Used Vehicle Service Contract" (the "Service Contract") from Defendants Wynn and National. (See Second Amended Complaint, Ex. B.) The Service Contract was entered into by Smitty's Auto and Plaintiff, but provided that, upon acceptance of the application by Defendant Wynn, it would become Plaintiff's contract. Plaintiff alleges that she paid a $1,380 premium for the purchase of coverage.

In May 2011, Plaintiff's car stopped operating. At the direction of Smitty's Auto, Plaintiff had her vehicle taken to Exclusive Auto in Burlington, New Jersey, to determine what repairs were needed. Exclusive Auto, after taking apart the engine, determined that the vehicle needed a new engine.

Plaintiff then requested that Wynn repair the vehicle. Wynn refused to authorize the repair and denied that the Service Contract provided coverage on the basis that the vehicle was covered under the manufacturer's warranty. Specifically,

---

[1] Although the Court dismissed the PLA claim without prejudice, Plaintiff abandoned this claim in the Second Amended Complaint.

3

Plaintiff alleges that "Defendants refused to authorize repair of the vehicle by denying without any basis that the [Service Contract] provided coverage and by misrepresenting to [her] that the vehicle was also covered under a manufacturer's warranty after Defendants already knowingly voided any manufacturer's warranty." (Second Amended Complaint, Docket No. 28 ¶ 28 (emphasis added).) Plaintiff, relying upon Defendants' misrepresentations, contacted the manufacturer of the car, General Motors, to seek coverage and repair. General Motors, however, denied coverage because Exclusive Auto had taken apart the engine "at the direction of Defendants," thereby voiding the warranty. (Second Amended Complaint ¶ 30 (emphasis added).) Plaintiff again contacted Defendants and demanded coverage under the Service Contract. According to Plaintiff, Defendants, "knowing that the [Service Contract's] arbitration provision made it financially impossible for Plaintiff (or any consumer) to pursue any legal remedies against Defendants, again refused to pay and denied coverage without any basis whatsoever, but solely to save Defendants money." (Second Amended Complaint ¶ 32.)

**B. Procedural History**

Plaintiff filed suit on November 15, 2011. On January 5, 2012, Defendants removed the matter to this Court, citing CAFA jurisdictional grounds. After Plaintiff commenced this action in

state court, Defendants agreed to pay for the repair, and the repairs were subsequently completed.[2] Despite the paid-for repairs, Plaintiff claims here that she sustained additional losses, e.g., she lost the use of her car for at least five months during which time she paid $2,103 to the finance company, $185 for automobile insurance, and $130 in towing costs.

**C. Plaintiff's Claims**

Plaintiff's Second Amended Complaint alleges one Count under the CFA and one Count under the TCCWNA. Defendants now move before this Court to dismiss the Second Amended Complaint in its entirety. As an initial matter, the Court notes that the parties have waived enforcement of the arbitration provision in the Service Contract. Because it was unclear whether the parties intended to pursue arbitration, the Court had questioned whether Defendants' Motion to Dismiss the First Amended Complaint was, in effect, a motion to compel arbitration. (See Docket No. 16.)[3] Defendants responded that they, along with Plaintiff, had, in fact, waived arbitration and agreed that this case should be submitted to this Court for adjudication. (Docket No. 17, at 1

---

[2] This fact is not averred in the Second Amended Complaint but Plaintiff does not dispute that Defendant paid for the repair of the car.

[3] Motions to compel arbitration are treated as a motion to dismiss for failure to state a claim. Palko v. Airborne Express, Inc., 372 F.3d 588, 597 (3d Cir. 2004).

("In the instant matter, neither the plaintiff nor defendants have requested that this matter be compelled to arbitration.").)[4]

That the parties have waived their right to have this matter presented to an arbitrator, however, does not mean that the arbitration provision itself is not at issue in this case. To the contrary, Plaintiff's claims challenge the arbitration clause as being in violation of both the CFA and TCCWNA. The Court now turns to the parties' arguments.

### STANDARD

"To survive a motion to dismiss, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n.27 (3d Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Iqbal, 556 U.S. at 678).

The Court conducts a three-part analysis when reviewing a claim:

---

[4] Parties may agree to waive their agreement to arbitration. See Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 222-25 (3d Cir. 2007) (acknowledging parties may waive right to compel arbitration); see also 21 Williston on Contracts §57:16 (4th ed.) ("It has been repeatedly held that a covenant in a contract providing for arbitration may be waived.").

First, the court must "tak[e] note of the elements a
plaintiff must plead to state a claim." Iqbal, 129 S.
Ct. at 1947.  Second, the court should identify
allegations that, "because they are no more than
conclusions, are not entitled to the assumption of
truth."  Id. at 1950.  Finally, "where there are well-
pleaded factual allegations, a court should assume
their veracity and then determine whether they
plausibly give rise to an entitlement for relief." Id.

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010);

see also Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir.

2009) ("[A] complaint must do more than allege the plaintiff's

entitlement to relief. A complaint has to 'show' such an

entitlement with its facts.").

In addition, the Federal Rules of Civil Procedure require

that a party alleging fraud "must state with particularity the

circumstances constituting fraud or mistake." Fed. R. Civ.

P. 9(b). "A plaintiff must 'state the circumstances of the

alleged fraud with sufficient particularity to place the

defendant on notice of the precise misconduct with which [it is]

charged.'" Baker v. Inter Nat'l Bank, No. 08-5668, 2012 WL

174956, at *6 (D.N.J. Jan. 19, 2012) (quoting Frederico v. Home

Depot, 507 F.3d 188, 200 (3d Cir. 2007)). "The heightened

pleading standards of Rule 9(b) apply to claims of fraud brought

under New Jersey law." Id. (citing Frederico, 507 F.3d at 200).

**ANALYSIS**

The Second Amended Complaint alleges violations of the CFA

and the TCCWNA based primarily upon the theory that the

arbitration provision in the Service Contract violates Plaintiff's rights under these consumer protection statutes and makes it financially impossible for consumers to pursue any legal remedies against Defendants. (See, e.g., Second Amended Complaint ¶¶ 32, 43.) The Second Amended Complaint also alleges a CFA violation based on the theory that Defendants denied warranty coverage after knowingly voiding the manufacturer's warranty by directing the repair shop to take apart the engine.[5] (See discussion infra.) The Court will address these claims in reverse.

### A. Consumer Fraud Act

To state a cause of action under the CFA, a plaintiff must allege: (1) an unlawful practice by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal nexus between the defendant's unlawful practice and the plaintiff's ascertainable loss. Lee v. Carter-Reed Co., Inc., 203 N.J. 496, 521 (2010); Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund, 929 A.2d 1076, 1086 (N.J. 2007).[6]

---

[5] Since the putative class still has not been certified, the Court evaluates the Second Amended Complaint as to the particular plaintiff. Green v. Green Mountain Coffee Roasters, 279 F.R.D. 275, 281 (D.N.J. 2011) (citing Rolo v. City of Investing Co. Liquidating Trust, 155 F.3d 644, 659 (3d Cir. 1998), abrogation on other grounds recognized, Forbes v. Eagleson, 228 F.3d 471 (3d Cir. 2000)); Luppino v. Mercedes-Benz USA, LLC, No. 09-5582, 2010 WL 3258259, at *4 (D.N.J. Aug. 13, 2010)).

[6] The CFA provides in relevant part:

In essence, as clarified by counsel at oral argument, the
Second Amended Complaint alleges two unlawful practices under
the CFA. First, Plaintiff alleges that Defendants fraudulently
denied warranty coverage by claiming that the vehicle was
covered by a manufacturer's warranty but at the same time
directing the repair shop to tear out the engine so that the
manufacturer's warranty would be voided. Second, Plaintiff
alleges that Defendants engaged in a marketing scheme to deceive
Plaintiff by, <u>inter</u> <u>alia</u>, burying the arbitration provision in
the Service Contract and preventing Plaintiff from pursuing her
rights under the CFA and TCCWNA.

### 1. Defendants' Denial of Warranty Coverage

With respect to Defendants' denial of warranty coverage,
New Jersey courts have held that a breach of contract or
warranty alone is not an unlawful practice under the CFA in the
absence of "substantial aggravating factors." <u>See, e.g.</u>,
<u>D'Ercole Sales, Inc. v. Fruehauf Corp.</u>, 501 A.2d 990, 1001 (N.J.
Super. Ct. App. Div. 1985) ("We do not deem that the disavowal
by Fruehauf, offensive though it may be, is deplorable enough to

---

Any person who suffers any ascertainable loss of moneys or
property, real or personal, as a result of the use or
employment by another person of any method, act, or
practice declared unlawful under this act or the act hereby
amended and supplemented may bring an action or assert a
counterclaim therefor in any court of competent
jurisdiction.

N.J. Stat. Ann. § 56:8-19.

constitute an 'unconscionable commercial practice' under the
Consumer Fraud Act nor do we deem that the conduct, unjustified
as it may be, transcends an 'unconscionable commercial practice'
under the facts and circumstances of this commercial
transaction."); Cox v. Sears, Roebuck & Co., 647 A.2d 454, 462
(N.J. 1994) ("However, 'a breach of warranty, or any breach of
contract, is not per se unfair or unconscionable . . . and a
breach of warranty alone does not violate a consumer protection
statute.'" (quoting Fruehauf, 501 A.2d at 998)). In Fruehauf,
the court addressed the question of whether a seller's refusal
to rectify a product defect, thereby breaching a warranty in a
commercial sales transaction, constituted an unconscionable
commercial practice under the CFA. After examination of the CFA
and New Jersey's Uniform Consumer Sales Practice Act, the
Fruehauf court held that in consumer goods transactions,
"unconscionability must be equated with the concepts of
deception, fraud, false pretense, misrepresentation, concealment
and the like which are stamped unlawful under [the CFA]." 501
A.2d at 31. In sum, the court held there must be "substantial
aggravating circumstances." Id. (citation omitted).

Hence, while every breach of warranty or contract is
inherently unfair to the non-breaching party who does not
receive the benefit of his bargain, under New Jersey law there
must be substantial aggravating circumstances in order to make

10

available to consumers the CFA's "powerful" remedies. Id. Here,
Plaintiff alleges that Defendants denied coverage and
misrepresented to Plaintiff that her vehicle was covered by a
manufacturer's warranty when they knew that any such warranty
had been voided by their instructions to Exclusive Auto to tear
out the engine. (Second Amended Complaint ¶¶ 28 & 30.)[7] As
clarified at oral argument, Plaintiff argued that her Complaint,
and specifically paragraphs 28 and 30, should be interpreted to
allege the following: that Defendants (1) misrepresented to
Plaintiff that her vehicle was covered under a manufacturer's
(General Motors) warranty; (2) thereafter directed Exclusive
Auto take Plaintiff's car engine apart (Second Amended Complaint
¶ 30); (3) then sent Plaintiff to Exclusive Auto; (4) Exclusive
Auto dismantled the engine at Wynn's direction; (5) the
manufacturer (General Motors) denied the warranty because the
engine had been torn apart and the warranty voided; and (6)
Wynn, thereafter, denied coverage without any basis.

    While the Court questioned the plausibility of these
allegations – and Defendants have labeled these allegations as
"fantasy" (Defs.' Supp. Reply, Docket No. 44, at 4) - it is not

_____

[7] While "[a] plaintiff need not demonstrate 'aggravating factors'
[for a CFA claim] when the 'unlawful practice' is an affirmative
misrepresentation", Belmont Condo. Ass'n, Inc. v. Geibel, No. A-
2584-10T3, 2013 WL 3387636, at *14 (N.J. Super. Ct. App. Div.
July 9, 2013), here, it is the Defendants' denial of coverage
rather than solely the accompanying misrepresentation that forms
the basis of this CFA claim.

the Court's role at the motion to dismiss stage to decide the

merits.[8] Because the allegation, as understood by the Court, and

confirmed by Plaintiff's counsel at oral argument, is a very

serious one, Plaintiff has pled substantial aggravating

circumstances. Plaintiff has also adequately pled an

ascertainable loss causally connected to the denial of coverage.

She was forced to initiate suit against Defendants in order to

obtain payment for the repairs to her vehicle. This part of

Plaintiff's CFA claim may proceed, and Defendants' motion is

DENIED as to this claim.

---

[8] Although Defendants characterize the allegations as
fantasy, all pleadings are governed by Federal Rule of Civil
Procedure 11. See Fed. R. Civ. P. 11(b)(3) ("By presenting to
the court a pleading, written motion, or other paper—whether by
signing, filing, submitting, or later advocating it—an attorney
or unrepresented party certifies that to the best of the
person's knowledge, information, and belief, formed after an
inquiry reasonable under the circumstances: . . . the factual
contentions have evidentiary support or, if specifically so
identified, will likely have evidentiary support after a
reasonable opportunity for further investigation or
discovery . . . ."). Thus, the Court expects that these very
serious allegations comply with Rule 11(b)(3)'s pleading
requirements. The Court hastens to note that the Service
Contract provides "You are responsible for authorizing and
paying for any teardown or diagnostic time needed to determine
if Your Vehicle has a Covered Breakdown." (Service Contract at
2.) Clearly, the teardown of the engine could easily result in a
dispute between the manufacturer and the dealer over coverage.
But, Plaintiff's allegations allege much more than a
manufacture-dealer dispute, i.e., that Wynn not only directed
the teardown of the engine but also fraudulently denied coverage
on the basis of the manufacturer's warranty that had been voided
as a result of the teardown.

## 2. Defendants' Inclusion of an Allegedly Unconscionable Arbitration Provision

Plaintiff also asserts that the inclusion of the arbitration provision in the Service Contract, which precludes certain statutory relief and establishes arbitration costs and procedures that are "unconscionable, contradictory and confusing," constitutes an unlawful practice. (Opp., Docket No. 34, at 22.) The Court dismisses this claim for the same reasons it did so previously.

As an initial matter, parties may arbitrate a consumer's statutory rights under the CFA. See Epix Holdings Corp. v. Marsh & McLennon Co., Inc., 982 A.2d 1194, 1207-09 (N.J. Super. Ct. App. Div. 2009), overruled in part on other grounds, Hirsch v. Amper Fin. Servs., 71 A.3d 849, 861 (N.J. 2013). In Epix Holdings Corp. v. Marsh & McLennon Co., Inc., the court held, "[i]n finding such [CFA] claims arbitrable, we found no inherent conflict between the CFA's underlying public policy 'to root out consumer fraud,' and the 'competing and compelling public policy favoring arbitration as a means of dispute resolution and requiring liberal construction of contracts in favor of arbitration.'" Id. (citation omitted); see also Gras v. Assocs. First Capital Corp., 786 A.2d 886, 891-92 (N.J. Super. Ct. App. Div. 2001), cert. denied, 794 A.2d 184 (N.J. 2002); Caruso v.

<u>Ravenswood Developers, Inc.</u>, 767 A.2d 979, 984-85 (N.J. Super. Ct. App. Div. 2001).[9]

As she did in her First Amended Complaint, Plaintiff asserts numerous "unlawful practices" to support the CFA claim based on the arbitration provision. First, Plaintiff's contention that the arbitration provision is "imbedded, obscured, and/or unreadable" (Second Amended Complaint ¶ 2(a)), or somehow rendered unconscionable due to the size of the print and the location of the provision within the Service Contract (Opp. at 25), is belied by the Service Contract itself. Plaintiff, in signing the Service Contract, acknowledged that she had read and understood certain sections of the four-page contract, including the section that contains the arbitration provision. Just above the customer signature line, the Service Contract contains the following statement:

> I have agreed to and acknowledge the maintenance schedule, the claim process, the coverage provided, the time and mileage limitations, the exclusions of coverage, the cancellation provisions of this Contract including the "<u>Other Important Contract Provisions/Limitations</u>" exceptions section, and have read and understood said provisions. It is understood that the purchase of this [Service Contract] is NOT a requirement to purchase or obtain financing. . . .

---

[9] <u>But see Rockel v. Cherry Hill Dodge</u>, 847 A.2d 621, 623-24 (N.J. Super. Ct. App. Div. 2004) (concluding that the public policy concerns under CFA outweighed public policy favoring arbitration in highly ambiguous arbitration provision), <u>cert. denied</u>, 859 A.2d 689 (N.J. 2004).

(Service Contract at 2); <u>see also</u> <u>Ramey v. Burlington Car
Connection, Inc.</u>, No. 10-1445, 2010 WL 4320407, at *1-2 (D.N.J.
Oct. 25, 2010) (highlighting that arbitration provision found to
be valid appeared above signature line); <u>Muhammad v. Cnty. Bank
of Rehoboth Beach, Delaware</u>, 912 A.2d 88, 93 (N.J. 2006)
(emphasizing obviousness of arbitration provision located
directly above signature line). The arbitration provision is a
subsection listed under the heading "OTHER IMPORTANT CONTRACT
PROVISIONS/LIMITATIONS," and is further identified by the
subheading "<u>Arbitration</u>." (Service Contract at 4.)[10] Thus, by
including this acknowledgment, the Service Contract specifically
calls the signatory's attention to the section containing the
arbitration provision. The provision is also written in the same
font as the other terms of the four-page contract – none of
which Plaintiff contends were unreadable. Moreover, Plaintiff's
conclusory assertions to the contrary notwithstanding, the
arbitration provision is not imbedded as it is the last

---

[10] Plaintiff unconvincingly argues that the underlined
heading modifies the phrase "cancellation provisions," which
does not include the arbitration provision, and that the heading
is located in a separate column from the arbitration clause.
(Opp. at 25-26 n.5.) The Court disagrees and, in any event,
Plaintiff has not otherwise persuaded the Court that the
arbitration provision included in the Service Contract was
confusing.

provision in the contract and is set apart from the prior
provisions by the label "Arbitration".[11]

Second, Plaintiff argues that the arbitration provision
unlawfully required consumers to pay their own attorney's fees
and costs in violation of the CFA. Plaintiff argues that this
violates the CFA's provision of mandatory treble damages and
attorney's fees if she were to prove a CFA violation.[12] See N.J.
Stat. Ann. § 56:8-19; Cox, 647 A.2d at 465. The arbitration
provision, however, does not bar treble damages. Although the
treble damages provision of the CFA is "a punitive measure,"
Daaleman v. Elizabethtown Gas Co., 390 A.2d 566, 569 (N.J.
1978), there is nothing in the arbitration clause that bars a
three-time multiplier of actual damages. As for the attorney's
fees provision,  the Court finds that this provision, which may
or may not be enforceable depending on the claim asserted, does

---

[11] Plaintiff also points to other portions of the
arbitration provision that ostensibly create ambiguity, such as
the statement that if the dispute is between the "Lienholder"
and the "Vehicle owner" then a different arbitration provision
will govern. (Service Contract at 4.) Plaintiff argues that an
unsophisticated customer would not know what a lienholder is and
that it is unconscionable to apply an "unknown" arbitration
clause. (Opp. at 5-6.) However, these terms are all defined in
the Service Contract and the contract containing the alternative
arbitration clause is identified by name.

[12] Defendants argue that Plaintiff cannot show that she
suffered an ascertainable loss and, therefore, is not entitled
to treble damages. However, even if she cannot show an
ascertainable loss, Plaintiff would still be entitled to
attorney's fees if she can prove that Defendants committed an
unlawful practice. Cox, 647 A.2d at 465.

not constitute an unlawful practice for essentially the same
reasons the provision is not violative of the TCCWNA. See infra.

Third, Plaintiff alleges no facts in support of her
conclusory assertions that Defendants "require[d] customers to
pay prohibitively excessive costs and fees [to] discourage
and/or prohibit consumers from prosecuting any claims and/or
disputes against Defendants" (Second Amended Complaint ¶ 2(c)).
Indeed, this allegation is belied by the record here. Not only
did Plaintiff file a lawsuit, but also Defendants did not seek
to compel arbitration. Thus, Plaintiff has failed to allege any
of the elements of her cause of action.

Fourth, Plaintiff's contention that the arbitration
provision "[e]xtinguish[ed] [her] right to a jury trial without
adequate and/or proper notice" (Second Amended Complaint ¶ 2(d))
must also fail because a party can voluntarily waive its rights
to a jury trial, as Plaintiff did here, and agree to arbitrate
any claims. See Great W. Mortg. Corp. v. Peacock, 110 F.3d 222,
231 (3d Cir. 1997) ("[B]y agreeing to arbitration . . .
[Plaintiff] effectively waived her right to a jury trial."). 
Further, Plaintiff provided no facts to show she lacked adequate
or proper notice, and the Court already dismissed any
allegations that any part of the arbitration provision was
"imbedded, obscured, and/or unreadable" (Second Amended
Complaint ¶ 2(a)).

Fifth, there are no facts aside from Plaintiff's conclusory assertions that Defendants established California as the forum in which disputes were to be resolved as a means of discouraging the pursuit of legitimate claims. <u>Cf. Carnival Cruise Lines, Inc. v. Shute</u>, 499 U.S. 585, 595 (1991). Further, any bad-faith motive is belied by the terms of the contract itself which permit the parties to agree to an alternative forum. (Service Contract at 3 ("The arbitration shall take place in Orange County, California, **unless the parties agree otherwise**.") (emphasis added).) Plaintiff has not even alleged that she had requested the arbitration take place outside of California or that Defendants unreasonably had refused to acquiesce to such a change of venue. Instead, Plaintiff filed the within lawsuit.

Sixth, Plaintiff's allegation that the arbitration provision's bar of punitive damages constitutes an unlawful practice (Second Amended Complaint ¶ 2(f)) also fails because, like with a jury trial, a party can voluntarily waive its rights to punitive damages. <u>See, e.g.</u>, <u>Great Western Mortg. Corp.</u>, 110 F.3d at 232 (recognizing punitive damages may be waived); <u>see also</u> <u>Mastrobuono v. Shearson Lehman Hutton, Inc.</u>, 514 U.S. 52 (1994) (finding parties could agree to include punitive damages within the issues to be arbitrated regardless of state law that

otherwise precluded arbitrators from awarding punitive damages).[13]

Accordingly, Defendants' motion to dismiss is GRANTED as to this claim.

**B. TCCWNA**

Defendants also move to dismiss Plaintiff's claim under the TCCWNA, which prohibits contract provisions that violate clearly established legal rights under federal or state law. Plaintiff claims the arbitration provision violated the TCCWNA in two ways: first, because the provision's bar on recovery of attorney's fees and costs violates the CFA's fee-shifting framework, and second, because the provision was so imbedded and obscure as to be unreadable in violation of the PLA.[14] The Court previously rejected the PLA claim brought by Plaintiff, finding

---

[13] Even if this bar to punitive damages was unconscionable, a court could sever the provision and enforce the rest of the arbitration agreement. See, e.g., Pyo v. Wicked Fashions, Inc., No. CIV09-2422, 2010 WL 1380982, at *7 (D.N.J. Mar. 31, 2010) (severing provision in arbitration agreement precluding award of punitive damages, but enforcing remainder of arbitration agreement, because provision was unconscionable as it incorrectly stated that New Jersey law forbade arbitrators from awarding punitive damages); Coiro v. Wachovia Bank, N.A., No. 11-3587, 2012 WL 628514, at *5 (D.N.J. Feb. 27, 2012); see also Spinetti v. Serv. Corp. Int'l, 324 F.3d 212, 219-223 (permitting excision of offending provision precluding award of attorney's fees).

[14] Although the Second Amended Complaint does not state the basis of the claim clearly, Plaintiff articulated the basis at oral argument and in her written submissions. Because the Court dismisses this claim, amending the count would be futile for the reasons expressed herein.

that the Service Contract was written in a simple, clear, and understandable way. (Docket No. 25.) Thus, for the same reasons, Defendants' motion to dismiss the TCCWNA claim based upon these allegations is GRANTED.

The Court next addresses Plaintiff's remaining claim that Defendants violated the TCCWNA by the insertion of an attorney's fees provision that requires each party to pay its own attorney's fees. Plaintiff alleges that such language is in contravention of the CFA, which awards mandatory attorney's fees and costs to the prevailing party.

The TCCWNA provides:

No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed. . . .

N.J. Stat. Ann. § 56:12-15.

By its plain terms, the TCCWNA applies to a seller who, in the course of his business, offers, gives, or displays a written consumer warranty that includes a provision that violates any clearly established legal right of a consumer. Smith v. Vanguard Dealer Services, LLC, No. L-3215-09, 2010 WL 5376316, at *3

20

(N.J. Super. Ct. App. Div. Dec. 21, 2010) (citing N.J. Stat. Ann. § 56:12-15). Here, the Service Contract was entered into by Smitty's Auto, referred to as the "Selling Dealer," and Plaintiff.[15] (Service Contract at 1.) Smitty's Auto, however, is not a named defendant. The Service Contract provides that once the application is accepted, if at all, by Defendant Wynn, it becomes a contract. The parties have not addressed whether Defendant Wynn meets the definition of "seller, lessor, creditor, lender or bailee," and there appears to be good reason to find that Defendant does not meet such definition, see, e.g., Ogbin v. GE Mooney Bank, No. 10-5651, 2011 WL 2436651, at *4 (D.N.J. June 13, 2011). The Court, nonetheless, assumes without deciding that Defendant Wynn falls within this definition. To the extent this claim is against National Casualty, however, the claim fails as there is no plausible allegation that it entered into a written warranty/contract with Plaintiff.[16]

Although the TCCWNA prohibits inclusion in written contracts and warranties of provisions that violate a consumer's

---

[15] Defendants also contend that Plaintiff does not qualify as a consumer within the statute because she was not an "aggrieved consumer." Because the Court dismisses this count on other grounds, it does not reach this issue.

[16] Although the Service Contract permits the customer to make a claim directly against Defendant National in the event that a claim is not settled within sixty days (Service Contract at 1), Plaintiff does not allege that she made such a claim against Defendant National after Defendant Wynn refused to repair the vehicle. (See Second Amended Complaint ¶ 26.)

21

"clearly established legal right," N.J. Stat. Ann. § 56:12-16,
the Act does not define what constitutes such a right. In
enacting the TCCWNA, the legislature listed several examples of
the types of provisions that it believed violated clearly
established rights:

> Examples of such provisions are those that deceptively
> claim that a seller or lessor is not responsible for
> any damages caused to a consumer, even when such
> damages are the result of the seller's or lessor's
> negligence. These provisions provide that the consumer
> assumes all risks and responsibilities, and even
> agrees to defend, indemnify and hold harmless the
> seller from all liability. Other provisions claim that
> a lessor has the right to cancel the consumer contract
> without cause and to repossess its rental equipment
> from the consumer's premises without liability for
> trespass. Still other provisions arbitrarily assert
> the consumer cannot cancel the contract for any cause
> without punitive forfeiture of deposits and payment of
> unfounded damages. Also, the consumer's rights to due
> process is often denied by deceptive provisions by
> which he allegedly waives his right to receive legal
> notices, waives process of law in the repossession of
> merchandise and waives his rights to retain certain
> property exempted by State or Federal law from a
> creditor's reach.

McGarvey v. Penske Auto Grp., Inc., 486 F. App'x 276, 280 (3d
Cir. 2012) (citing Statement, Bill No. A1660, 1981 N.J. Laws,
Chapter 454, Assembly No. 1660, at 2-3).

The TCCWNA prohibits "certain affirmative actions . . . ,
which violate a substantive provision of law." Jefferson Loan
Co., Inc. v. Session, 938 A.2d 169, 182 (N.J. Super. Ct. App.
Div. 2008); see also Bosland v. Warnock Dodge, Inc., 964 A.2d
741 (N.J. 2009); United Consumer Fin. Servs. Co. v. Carbo, 982

A.2d 7, 22-23 (N.J. Super. Ct. App. Div. 2007). It is clear from the legislative history of the Act that any contract that provides that a seller or lessor is not liable for his own negligence is unenforceable and violates the TCCWNA. Plaintiff, however, does not contend that the arbitration provision is violative of the TCCWNA because it similarly purports to inoculate Defendant Wynn from all liability. Rather, she contends that the arbitration provision prevents her from recovering her attorney's fees in the event that she is a prevailing party on her CFA claim. This, she says, violates the CFA, which in turn violates the TCCWNA. The Court rejects Plaintiff's arguments for several reasons.

First, the allegedly offending language provides that "each party shall pay the fees of its own attorneys, the expenses of its witnesses, and all other expenses connected with the presentation of its case." (Service Contract at 3.) On its face, the arbitration provision states what has long been referred to as the "American Rule." Walker v. Giuffre, 209 N.J. 124, 127-28 (2012). "Courts in New Jersey have traditionally adhered to the American Rule as the principle that governs attorneys' fees. This guiding concept provides that, absent authorization by contract, statute or rule, each party to a litigation is responsible for the fees charged by his or her attorney." Id. Indeed, New Jersey has long "disfavor[ed] the shifting of

23

attorneys' fees." <u>Litton Indus., Inc. v. IMO Indus., Inc.</u>, 200
N.J. 372, 385 (2009).

In this regard, arbitration agreements traditionally
contain language whereby parties agree to pay their own fees.[17]
Indeed, the New Jersey Supreme Court has held that "[w]hen the
fee-shifting is controlled by a contractual provision, the
provision should be strictly construed in light of [the] general

---

[17] <u>See, e.g.</u>, <u>Coiro</u>, 2012 WL 628514, at *5 (arbitration
provision mandated plaintiff's payment of own costs and fees);
<u>Herrera v. Katz Commc'ns, Inc.</u>, 532 F. Supp. 2d 644, 647
(S.D.N.Y. 2008) ("The Company will pay the actual costs of
arbitration excluding attorney's fees. Each party will pay its
own attorney's fees and other costs incurred by their respective
attorneys."); <u>see also</u> <u>O'Brien v. Travelers Prop. & Cas. Ins.
Co.</u>, 65 F. App'x 853, 855-56 (3d Cir. 2003) ("As the Supreme
Court has made clear, in the absence of an agreement or statute
providing for attorney's fees, the American rule is that 'the
prevailing litigant is ordinarily not entitled to collect a
reasonable attorneys' fee from the loser.'" (quoting <u>Alyeska
Pipeline Serv. Co. v. Wilderness Soc'y</u>, 421 U.S. 240, 247
(1975); <u>Penn. v. Flaherty</u>, 40 F.3d 57, 60 (3d Cir. 1994))).

In some circumstances, courts in the Third Circuit have
found that a plaintiff presented sufficient evidence
demonstrating that arbitration would be prohibitively expensive
due to cost-splitting or cost-shifting provisions. <u>See</u> <u>Hall v.
Treasure Bay Virgin Islands Corp.</u>, 371 F. App'x 311, 313 (3d
Cir. 2010) (finding plaintiff had demonstrated that "loser pays"
provision rendered arbitration prohibitively expensive); <u>see
also</u> <u>Green Tree Fin. Corp.-Ala. V. Randolph</u>, 531 U.S. 79, 90
(2000) (noting that prohibitively expensive arbitration may but
does not necessarily render a clause in an arbitration provision
unenforceable). <u>But</u> <u>see</u> <u>Shapiro v. Baker & Taylor, Inc.</u>, No. 07-
3153, 2009 WL 1617927, at *8 (D.N.J. June 9, 2009) (upholding
arbitration provision containing cost-sharing and cost-shifting
provision where plaintiff failed to demonstrate inability to
pay); <u>Blair v. Scott Specialty Gases</u>, 283 F.3d 595, 605-10 (3d
Cir. 2002) (presence of cost-sharing provision in arbitration
agreement insufficient to hold unenforceable absent evidence of
plaintiff's limited financial resources).

policy disfavoring the award of attorneys' fees." Litton, 200
N.J. at 385. Thus, the provision - the "American Rule" - as
plainly written, does not violate the TCCWNA or any consumer's
clearly established right. It is only because the language of
this arbitration provision could be read so as to preclude an
award of attorney's fees upon the successful assertion of a CFA
claim that the long-established "American Rule" somehow becomes
an alleged violation of the TCCWNA according to Plaintiff. Such
an as-applied application cannot stand.[18] A contractual provision
cannot be the basis for a TCCWNA claim where the provision does
not violate a consumer's clearly established rights when applied
in the context of certain causes of action (such as standard
breach of contract or negligence claims) but could be read to
violate a consumer's clearly established rights when applied in
the context of other causes of action (such as a CFA claim). The
New Jersey Legislature could not have possibly intended this
result.[19]

---

[18] This is not to say that a CFA violation may not
constitute a TCCWNA violation as well. Certain affirmative
statements may be encompassed under both statutes. See Bosland
v. Warnock Dodge, Inc., 933 A.2d 942, 949 (N.J. Super. Ct. App.
Div. 2007) ("Those allegations are therefore sufficient to
establish a potential violation of the TCCWNA because a consumer
contract that violates a clearly established legal right under
the CFA regulations is also a violation of the TCCWNA."). As
discussed herein, Plaintiff's CFA allegations do not support a
TCCWNA violation.

[19] As discussed below, however, Plaintiff is not without a
remedy.

Moreover, if the TCCWNA were to prohibit the insertion of the "American Rule" in arbitration agreements as Plaintiff appears to suggest, such prohibition would contravene and be preempted by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"). In effect, such a holding would stand as an obstacle to the accomplishment of the FAA's objectives.

The FAA provides that an agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has declared that the principle purpose of the FAA is to "ensure that private arbitration agreements are enforced according to their terms." AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1748 (2011) (citing Volt Info. Scis., Inc. v. Bd. of Tr. of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989)). The statute was enacted to overcome courts' refusals to enforce agreements to arbitrate and evinces a liberal federal policy favoring arbitration agreements:

> The 'liberal federal policy favoring arbitration agreements,' Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24, 103 S. Ct. 927, 941, 74 L.Ed.2d 765 (1983), manifested by this provision and the Act as a whole, is at bottom a policy guaranteeing the enforcement of private contractual arrangements: the Act simply 'creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate.' Id. at 25, n.32, 103 S. Ct., at 942, n.32. As this Court recently observed, '[t]he preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered,' a

26

concern which 'requires that we rigorously enforce
agreements to arbitrate.' <u>Dean Witter Reynolds Inc. v.
Byrd</u>, 470 U.S. 213, 221, 105 S. Ct. 1238, 1242, 84
L.Ed.2d 158 (1985).

<u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473
U.S. 614, 625-26 (1985). The Supreme Court has therefore
concluded that "courts must place arbitration agreements on an
equal footing with other contracts . . . and enforce them
according to their terms." <u>Concepcion</u>, 131 S. Ct. at 1745
(citing <u>Buckeye Check Cashing, Inc. v. Cardegna</u>, 546 U.S. 440,
443 (2006); <u>Volt</u>, 489 U.S. at 478); <u>see also</u> <u>Allied-Bruce
Terminix Cos. v. Dobson</u>, 513 U.S. 265, 271-72 (1995) (noting the
legislature "intended courts to enforce [arbitration] agreements
into which parties had entered, and to place such agreements
upon the same footing as other contracts") (internal citations
and quotations omitted). This policy extends to disputes based
on both contractual and state statutory rights. <u>Mitsubishi</u>, 473
U.S. at 626-27 (noting absent general contract defenses, the FAA
"provides no basis for disfavoring agreements to arbitrate
statutory claims").

Indeed, New Jersey public policy strongly favors
arbitration as a method of dispute resolution. <u>See, e.g.</u>, <u>Alfano
v. BDO Seidman, LLP</u>, 925 A.2d 22, 31 (N.J. Super. Ct. App. Div.
2007); <u>Epix Holdings</u>, 982 A.2d at 1204-05; <u>see</u> <u>also</u> N.J. Stat.
Ann. 2A:24-1 ("A provision in a written contract to settle by

arbitration a controversy . . . shall be valid, enforceable and irrevocable, except upon such grounds as exist at law or in equity for the revocation of a contract."); Gras v. Assocs. First Capital Corp., 786 A.2d 886, 892 (N.J. Super. Ct. App. Div. 2001) ("[P]laintiffs can vindicate their statutory rights in the arbitration forum."). Even the TCCWNA contains a provision that it should be applied in connection with other statutes. See N.J. Stat. Ann. § 56:12-18 ("The rights, remedies and prohibitions accorded by the provisions of this act are hereby declared to be in addition to and cumulative of any other right, remedy or prohibition accorded by common law, Federal law or statutes of this State, and nothing contained herein shall be construed to deny, abrogate or impair any such common law or statutory right, remedy or prohibition.").

In practice, then, "the FAA preempts all state laws that impermissibly burden arbitration agreements." Yee v. Roofing by Classic Restorations, No. 3:09CV00311, 2010 WL 7864919, at *3 (D. Conn. June 8, 2010) (citing Doctor's Assoc.'s, Inc. v. Hamilton, 150 F.3d 157, 162 (2d Cir. 1998)). State laws that stand as an obstacle to the accomplishment of the FAA's objectives are impermissible. Concepcion, 131 S. Ct. at 1748.

Here, if the traditional "American Rule" language had to be either deleted or amended to free itself from a TCCWNA challenge, such a law would impermissibly burden arbitration

28

agreements. The purpose of the TCCWNA is to prohibit violations of clearly established rights, not the voluntary waiver of such rights[20] or the frustration of parties' agreements. See <u>Salvadori v. Option One Mortgage Corp.</u>, 420 F. Supp. 2d 349, 355 (D.N.J. 2006). Plaintiff's reading of the TCCWNA would, in essence, prohibit the traditional "American Rule" language in arbitration agreements in consumer contracts. This expansive reading is wrong. Even attempts to incorporate the "American Rule" in arbitration agreements, but limit its application to certain contexts, would be burdensome. For example, although the addition of the phrase "unless inconsistent with applicable law" to the "American Rule" may avoid a TCCWNA challenge based on a CFA claim (or any other mandatory fee-shifting claim), such additional phrase would still be susceptible to a challenge based on other claims that provide a discretionary award of attorney's fees. See <u>Delta Funding Corp. v. Harris</u>, 912 A.2d 104, 113-14 (N.J. 2006).

The New Jersey Supreme Court's decision in <u>Delta Funding</u> illustrates how contracting parties who desire to include the "American Rule" in their arbitration clauses face a dilemma to avoid a TCCWNA challenge like here. In <u>Delta Funding</u>, the

---

[20] As set forth <u>infra</u>, had Plaintiff pursued a CFA claim in arbitration, this provision would have been rendered unconscionable to the extent it would have prevented the arbitrator the power to award attorney's fees to the prevailing party. <u>Delta</u>, 912 A.2d at 113-14.

plaintiff brought a complaint alleging violations of the Truth in Lending Act ("TILA"), the Real Estate Settlement Procedures Act ("RESPA"), and the CFA. The defendant moved to compel arbitration. The arbitration agreement provided that "[u]nless inconsistent with applicable law, each party shall bear the expense of that party's attorneys', experts' and witness fees, regardless of which party prevails in the arbitration." Delta Funding, 912 A.2d at 114. The Court held that the CFA and TILA claims, which provided mandatory attorney's fees to prevailing parties, were clearly recoverable under the arbitration agreement as written. However, the court held, that because under RESPA whether a prevailing party will be awarded attorney's fees and costs is discretionary, the arbitration agreement, as written, was unconscionable. As the court stated, the language as written "suggests that the arbitrator may not have the power to award attorneys' fees when the statutory remedy is merely discretionary." Id.

It is clear that the only way to write such an arbitration agreement free from a TCCWNA challenge under Plaintiff's theory is to set forth all the various scenarios that an arbitrator might face in awarding fees under various claims.[21] Such an

_____

[21] There would be no practical way for a party to draft an arbitration provision that sets forth the applicability of the "American Rule" but exempts cases involving claims brought pursuant to a fee-shifting statute. New Jersey has more than 100

onerous burden would stand as an impermissible obstacle to the accomplishment of the FAA.

Finally, it is worth noting that Plaintiff is not without a remedy. Had the parties gone to arbitration, and the Plaintiff prevailed on a CFA claim, the arbitrator could have declared unconscionable the attorney's fees provision and awarded such fees.[22] See Delta Funding, 912 A.2d at 114. That matter, however, is not before the Court.

For all the foregoing reasons, Defendants' motion to dismiss Count II, the TCCWNA claim, is GRANTED.

### CONCLUSION

For the reasons stated herein, the Defendant's motion to dismiss Count 1 (the CFA Count) is GRANTED, in part, and DENIED, in part. Defendants' motion to dismiss Count 2 (the TCCWNA Count) is GRANTED. The Court's prior Opinion and Order (Docket Nos. 25 and 26), finding that Plaintiff stated a TCCWNA claim, is vacated.

---

such statutes, several of which are applicable to consumer contracts. See New Jersey Fee Shifting Statutes, available at https://www.judiciary.state.nj.us/civil/ NJFeeShiftingStatute.pdf.

[22] Many of the arguments made by Plaintiff go to the unconscionability of the arbitration provision. See, e.g., Pl.'s Supp. Opp. at 10 ("The lack of any rules for selecting the three arbitrators again permits the Defendants to delay or deny access to the arbitration forum by not agreeing to arbitrators named by the consumer.").

s/Renée Marie Bumb_____
RENÉE MARIE BUMB
United States District Judge

Dated: October 15, 2014